**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SCOTT PHILLIP LEWIS,

                                    Plaintiff,

            - v -                                       Civ. No. 8:24-CV-121
                                                            (MAD/DJS)

PAYMASTER PAYROLL SYSTEMS, INC., *et al.*,

                                    Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

SCOTT PHILLIP LEWIS
Plaintiff *Pro Se*
Lake Placid, New York 12946

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER[1]

        The Clerk has sent the undersigned Plaintiff's civil Complaint for review

pursuant to 28 U.S.C. § 1915(e).  Dkt. No. 1, Compl.  Plaintiff has not paid the filing

fee, but instead submitted a Motion to Proceed *in forma pauperis* ("IFP").  Dkt. No. 2,

IFP App.  The Complaint alleges that Plaintiff was denied the full and equal enjoyment

of services in violation of the Americans with Disabilities Act ("ADA").  Compl. at ¶¶

43-92.

---

[1] This matter was referred to the undersigned pursuant to L.R. 72.3(d).

## I. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis*. *See id.* In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Analysis of the Complaint

The allegations in the Complaint concern the alleged denial of services to Plaintiff regarding assistance with filing tax returns. *See generally* Compl. The Complaint is subject to dismissal at this point for several reasons.

First, Plaintiff seeks only monetary damages, while a Title III ADA claim does not permit recovery of compensatory damages, only injunctive relief. *Hejmej v. Peconic Bay Med. Ctr.*, 2022 WL 5429675, at *7 (E.D.N.Y. July 5, 2022).

Second, it would appear, based on the presently state of the pleadings, that Plaintiff's claims are untimely. The statute of limitations for claims under the ADA in New York is three years. *Shalto v. SFL Pizza Corp.*, 2020 WL 3577335, at *2 (E.D.N.Y. June 30, 2020); *Johnson v. DHS/ICE*, 2013 WL 6669232, at *4 (W.D.N.Y. Dec. 18, 2013). The first cause of action alleges that Defendants Paymaster Payroll Systems and Pompo failed to file or improperly filed federal tax returns on Plaintiff's behalf in 2015, 2016, and/or 2017. Compl. at ¶ 50. This Complaint was filed in 2024, and so any claim regarding those tax filings is clearly untimely. Plaintiff does allege communication with Defendant Pompo on January 10, 2024, *id.* at ¶¶ 62-63, but alleges only that Pompo mocked him in return, which does not allege a denial of service within the meaning of the ADA. Similarly, the second cause of action relates to allegations against Defendant Cardarelli concern tax issues in 2015 and 2016 – plainly outside the applicable limitations period.

"[A] court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Bruce v. Tompkins Cnty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum*

*v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)).  Each of the deficiencies identified above could potentially be rectified by more detailed pleading and so the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend. Plaintiff is advised that any such amended complaint shall supersede and replace in its entirety the previous Complaint filed by Plaintiff. If this recommendation is accepted and Plaintiff is permitted to amend his Complaint, Plaintiff is further warned that the failure to submit an amended complaint could result in dismissal of this action.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[2] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW</u>.** *Roldan v.*

---

[2] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  February 29, 2024
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

6

Case 8:24-cv-00121-MAD-DJS   Document 7   Filed 02/29/24   Page 7 of 40

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

2022 WL 5429675
Only the Westlaw citation
is currently available.
United States District Court, E.D. New York.

Ryszard HEJMEJ, Bozena Hejmej,
and Tibor Farkas, Plaintiffs,
v.
PECONIC BAY MEDICAL CENTER
and Northwelll Health, Defendants.

17-cv-782 (JMA)(SIL)
|
Signed July 5, 2022

**Attorneys and Law Firms**

David John Hommel, Jr., Eric Baum, Andrew Rozynski, Eisenberg & Baum, LLP, New York, NY, for Plaintiffs Ryszard Hejmej, Bozena Hejmej.

David John Hommel, Jr., Andrew Rozynski, Eisenberg & Baum, LLP, New York, NY, for Plaintiff Tibor Farkas.

Roy W. Breitenbach, Harris Beach PLLC, Uniondale, NY, Daniel Robert Lecours, Harris Beach PLLC, Albany, NY, for Defendants.

## REPORT AND RECOMMENDATION

STEVEN I. LOCKE, United States Magistrate Judge:

**\*1** Presently before the Court in this civil rights action, on referral from the Honorable Joan M. Azrack for Report and Recommendation, are: (i) Defendants' Peconic Bay Medical Center (the "Hospital") and

Northwell Health ("Northwell" and together with the Hospital, "Defendants") motion for summary judgment ("Defendants' Motion" or "Def. Mot."), Docket Entry ("DE") [78]; and (ii) Plaintiffs' Ryszard Hejmej ("Ryszard"), Bozena Hejmej ("Bozena," together with Ryszard, the "Hejmejs"), and Tibor Farkas ("Farkas," together with the Hejmejs, "Plaintiffs") cross-motion for summary judgment ("Plaintiffs' Motion" or "Pl. Mot."). *See* DE [83]. Both motions are brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Def. Mot.; Pl. Mot.

By way of Complaint dated February 10, 2017, amended on September 21, 2019, Plaintiffs commenced this action against Defendants for violations of their rights under: (1) Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; (2) Section 504 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*; (3) Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116 *et seq.*; and (4) various sections of the New York Human Rights Law. *See* Complaint ("Compl."), DE [1]; Amended Complaint ("AC"), DE [41]. Of particular relevance as explained below, Plaintiffs' remaining claims are for injunctive relief and emotional distress damages. *See id.* For the reasons set forth herein, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; (iii) Plaintiffs' ADA, Rehabilitation Act, and ACA claims be dismissed with prejudice; and (iv) Plaintiffs' state law claim be dismissed without prejudice to refiling in the proper forum.

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 8 of 40

## I. BACKGROUND

### A. **The Parties**

The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements. Except where indicated, these facts are not in dispute.

Plaintiffs are deaf and primarily communicate using sign language, though all are capable of communicating through lip-reading, written notes, text messages, and gesturing. *See* Defendants' Rule 56.1 Statement of Material Facts Not in Dispute ("Def. 56.1"), DE [78-50], ¶¶ 12-19, 37-44, 119-27; Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Pl. 56.1"), DE [83-46], ¶¶ 1-17. Plaintiffs can each understand and read English. *See id.* The Hejmejs are married and Farkas is a friend of the Hejmejs. *Id.* Defendant Northwell operates the Hospital, where Plaintiffs were treated at different points between 2014 and 2018. *See generally* Def. 56.1; Pl. 56.1.

### B. **The Hospital's Policies and Practices Regarding Deaf Patients**

The Hospital's policies require that: (1) Hospital staff offer deaf patients and their companions auxiliary aids and interpreting services at each step of their care; (2) such offers – and any refusals – must be documented on a specific form and placed in that patient's medical records; and (3) all Hospital employees are permitted to offer and provide these interpreting services. *See* Pl. 56.1 ¶¶ 18-35.

**\*2** Pursuant to Hospital policy that was in effect between 2014 and 2016, deaf patients were to be provided with qualified sign language interpreting services through a video remote interpreting ("VRI") device provided by a company known as TransPerfect. *See* Def. 56.1 ¶ 2. When this policy was first implemented, the Hospital's VRI devices were available at all times. *Id.* at ¶ 3. The Hospital gradually increased its number of available VRI devices which Hospital physicians and clinical employees used to access sign language interpreters when needed to communicate with deaf patients. *Id.* In situations where VRI is not available, the Hospital also has the ability to provide in-person sign language interpreting services. *Id.* at ¶ 5.

After Northwell took over the Hospital's operations in 2017, it implemented the current iteration of its "People Who Are Deaf or Hard of Hearing" Policy (the "Policy") in or about July 2017. *See id.* at ¶ 6. Pursuant to the Policy, each deaf or hard of hearing patient is informed of his or her right to free interpreting services, and each Hospital staff member is required to document offers of interpreting services, and each offer's acceptance or refusal. *Id.* at ¶ 7. In early 2018, the Hospital upgraded its VRI offerings to use an iPad application through its vendor – a company known as "Language Line" – for interpreting all languages, including American Sign Language ("ASL"). *Id.* at ¶ 8. During all relevant times, the Hospital trained its clinical staff regarding the provision of sign language interpreting services to deaf patients, including annual education with regard to the VRI systems. *Id.* at ¶ 11.

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 9 of 40

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

## C. **Plaintiffs' Interactions with the Hospital**

As noted above, Plaintiffs sought medical treatment from the Hospital multiple times between 2014 and 2018. *See generally* Def. 56.1; Pl. 56.1. Each Plaintiff's visit(s) to the Hospital is summarized below.

1. Bozena's Medical Treatment at the Hospital

Bozena went to the Hospital's Emergency Department ("ED") with Ryszard on February 14, 2014, in order to obtain a medically-advised CT scan after falling and hitting her head. *See* Def. 56.1 ¶¶ 20-21. Upon arriving at the ED, the Hejmejs identified themselves as deaf to the Hospital's registrar. *Id.* at ¶ 22. Bozena was then interviewed and assessed by triage nurse, Kim Nazario, who indicated in her triage note that "Pt. needs hearing impaired interpreter." *Id.* at ¶ 23. The Hejmejs next encountered the ED's floor nurse, Dennis Cacciatore, with whom Bozena communicated entirely via writing. *Id.* at ¶ 25.

Bozena was next examined by Physician's Assistant Lyndsie Watkins ("PA Watkins"), who obtained a detailed medical history from her. *Id.* at ¶ 26. The ED's attending physician, Dr. Robert Ehlers, met with the Hejmejs and – without offering ASL interpretation – apprehended that she had "vomited earlier in the day, the pain medication she was taking, and her history of back pain." *Id.* at ¶¶ 28-30. Bozena then underwent a CT scan. *Id.* After the scan, she was treated and discharged. *Id.* at ¶¶ 32-33. Bozena has not returned to the Hospital as a patient since this visit. *Id.* at ¶¶ 34-35.

2. Ryszard's Medical
Treatment at the Hospital

Ryszard was a patient at the Hospital on: April 6-7, 2016; June 15, 2016; June 16-17, 2016; July 2-3, 2016; July 10-11, 2016; and July 30-31, 2016. *See* Pl. 56.1 ¶ 42. Bozena accompanied him for all of these visits, while Farkas accompanied the Hejmejs during Ryszard's April 2016 visit and for his first July 2016 visit. *Id.* at ¶¶ 43-44. Their experiences were as follows:

- **April 6-7, 2016:** On April 6, 2016, Ryszard came to the Hospital's ED complaining of high blood pressure and chest tightness, accompanied by Bozena and Farkas. Def. 56.1 ¶¶ 45-46; Pl. 56.1 ¶ 46. Plaintiffs contend that, upon arrival, Ryszard "informed the front desk that he is deaf and requested an interpreter, and later repeated this request to a nurse and three other Hospital employees." Pl. 56.1 ¶ 47. The parties disagree whether Ryszard requested interpretation services but agree that they were not provided to him. *See* Def. 56.1 ¶¶ 55-56; Pl. 56.1 ¶ 50. PA Watkins obtained Ryszard's medical history, including specific information regarding his medication, symptoms, and concerns, while attending ED physician Dr. Jeffrey Cangelosi obtained from Ryszard "a description of a 20+ minute episode of chest pain radiating down both arms." Pl. 56.1 ¶¶ 51, 53. Ryszard stayed at the Hospital's telemetry unit overnight for observation before being discharged the next day. *Id.* at ¶¶ 57-58.

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 10 of 40

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

**\*3** • **June 15, 2016:** Accompanied by Bozena and Farkas, Ryszard arrived at the ED complaining of high blood pressure. Def. 56.1 ¶¶ 59-60. Both the ED's triage nurse and the floor nurse communicated with him via lip-reading. *Id.* at ¶¶ 61-62. Dr. Cangelosi obtained information from Ryszard regarding his symptoms, complaints, and previous medical visits without the use of any interpretation services. *Id.* at ¶¶ 63-66. Ryszard was treated and discharged after nearly three-hours. *Id.* at ¶¶ 67-68.

• **June 16-17, 2016:** Accompanied by Bozena, Ryszard arrived at the ED on June 16, 2016 for elevated blood pressure. *Id.* at ¶¶ 69-70. Ryszard again informed the front desk that he was deaf and requested an interpreter. Pl. 56.1 ¶¶ 65, 66. Both the floor nurse and Dr. Cangelosi – who had seen Ryszard before – communicated with him without the use of any interpreting services. *See* Def. 56.1 ¶¶ 72-74. Ryszard was treated and discharged after approximately three hours. *Id.* at ¶¶ 75, 78.

• **July 2-3, 2016:** Accompanied by Bozena and Farkas, Ryszard arrived at the ED on July 2, 2016 for anxiety caused by high blood pressure. *Id.* at ¶¶ 79-80. According to Plaintiffs, Ryszard requested interpreting services, and his intake notes from that night indicate his deafness. *See* Pl. 56.1 ¶¶ 75-76. PA Watkins – without an interpreter, according to Plaintiffs – obtained detailed medical information from Ryszard "including that he was anxious and agitated even after taking clonazepam, and that his blood pressure was 200/100 when measured at home." Def. 56.1 ¶¶ 82-83. Ryszard was treated and discharged after approximately three hours. *Id.* at ¶¶ 87-88.

• **July 10-11, 2016:** Accompanied by Bozena, Ryszard sought medical treatment from the ED for anxiety caused by chest pain and elevated blood pressure. *Id.* at ¶¶ 89-90. Ryszard was admitted to the Hospital's telemetry unit to obtain a cardiology consultation and for observation overnight. *Id.* at ¶ 94. Ryszard requested that the floor nurse, Niquela Durham ("Durham") use VRI to communicate with him, but the VRI device malfunctioned. *Id.* at ¶ 95. Defendants contend that Durham told Ryszard that "she could order a live interpreter, which would take approximately an hour" but that Ryszard stated that "that he would use pen and paper to communicate with Hospital staff overnight," Def. 56.1 ¶¶ 96-100, while Plaintiffs assert that Ryszard preferred to wait for the live interpreter. *See* Pl. 56.1 ¶¶ 88-89. Ryszard was treated and discharged the next day. *See* Def. 56.1 ¶¶ 105-06.

• **July 30-31, 2016:** The Hejmejs came to the ED on July 30, 2016, again for Ryszard's elevated blood pressure, having run out of medication two days earlier. *Id.* at ¶¶ 107-08. According to Plaintiffs, Ryszard requested an interpreter from the front desk nurse but never received one. Pl. 56.1 ¶ 99. Notwithstanding Defendants' contention that Hospital staff was capable of communicating with Ryszard during his visit, *see* Def. 56.1 ¶¶ 109-13, 115,

the parties do not dispute that Ryszard was never provided with a sign language interpreter during his visit. *See* Pl. 56.1 ¶ 101. Ryszard was treated and discharged less than two hours later. *See* Def. 56.1 ¶¶ 116-17.

### 3. Farkas's Medical Treatment at the Hospital

Farkas was a patient at the Hospital on: November 27, 2014; May 1, 2016; May 2, 2016; and April 28-May 3, 2018. *See* Pl. 56.1 ¶ 117. Ryszard accompanied Farkas on some of these visits. *Id.* at ¶ 118. Their experiences were as follows:

**\*4** **• November 27, 2014:** Farkas visited the ED by himself for an undisclosed reason. Pl. 56.1 ¶ 121. The parties agree that, while Hospital staff treated Farkas, he did not receive a sign language interpreter. *Id.* at ¶ 122.

• **May 1, 2016:** Farkas visited the ED by himself complaining of back pain. *Id.* at ¶¶ 129-30. He requested sign language interpreting services, but the Hospital's VRI malfunctioned, and he communicated with Hospital staff via written notes. *Id.* at ¶ 132. While the ED's floor nurse and attending physician communicated with and treated Farkas, *see* Def. 56.1 ¶¶ 133-37, he was not provided with a sign language interpreter. *See* Pl. 56.1 ¶¶ 124, 126. Farkas was treated and released later that day. Def. 56.1 ¶¶ 138-39.

• **May 2, 2016:** Farkas visited the ED by himself the next day complaining of back pain. *Id.* at ¶ 140. Farkas

apparently requested, but did not receive, a sign language interpreter. He instead communicated with Hospital staff via written notes. *See* Pl. 56.1 ¶¶ 134-35; Def. 56.1 ¶¶ 142-47. Farkas was treated and released later that day. Def. 56.1 ¶¶ 148, 150.

• **April 28-May 3, 2018:** Farkas was brought to the ED on April 28, 2018, after collapsing and being found unresponsive in a local library. *Id.* at ¶ 151. While Farkas – who was briefly accompanied by Ryszard – could not initially communicate with an interpreter, he apparently spoke with one shortly after admission. *Id.* at ¶¶ 152-54, 174. Farkas met with multiple Hospital staff members regarding his medical issues and communicated with all of them via the Hospital's VRI system. *Id.* at ¶¶ 158-60. Defendants contend that, for an unknown reason, Farkas refused to continue using the Hospital's VRI technology. *Id.* at ¶¶ 161-65. On May 3, 2018, Farkas had a psychiatric consultation and met with the ED's attending physician, communicating through an interpreter. *Id.* at ¶¶ 169-70. After these consultations, Farkas was treated and discharged on May 3, 2018. *Id.* at ¶¶ 173, 175.

• **May 3, 2018:** On May 3, 2018, less than four hours after his discharge, Farkas returned to the ED, allegedly seeking a prescription for Suboxone. *Id.* at ¶ 176. At this time, the ED used a "split flow" process, where one physician served a triage function and examined the patient briefly to determine whether he or she could be designated to the "fast track"

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 12 of 40

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

area, used for minor complaints. *Id.* at ¶ 177. The split flow physician determined that Farkas could be sent to the ED's fast track area, where he was then examined and interviewed by a PA via VRI. *Id.* at ¶¶ 178-82. Farkas was thereafter treated and discharged. *Id.* at ¶¶ 183-84.

### D. Procedural History

Based on the above, the Hejmejs commenced this action against Defendants by way of Complaint dated February 10, 2017, asserting claims for violation of their rights under: (1) Title III of the ADA; (2) Section 504 of the Rehabilitation Act; (3) Section 1557 of the ACA; and (4) various sections of the New York Human Rights Law. *See* Compl. Defendants filed their Answer to the Complaint on May 15, 2017, *see* DE [12], and the parties appeared before Judge Azrack for an Initial Conference on June 14, 2017. *See* DE [16]. Discovery commenced thereafter. On September 21, 2019, with Judge Azrack's permission, Plaintiffs amended their Complaint to: (i) correct scrivener's errors; (ii) clarify certain allegations; and (iii) name Farkas as an additional Plaintiff. *See* AC. Defendants filed their Answer to the Amended Complaint on October 14, 2019. *See* DE [43]. Discovery continued until its July 2021 completion. *See* DE [63]. At this point in the litigation, Plaintiffs' only remaining claims are for injunctive relief and emotional distress damages. *See* Compl; AC.

**\*5** On February 4, 2022, the parties filed their respective motions for summary judgment, *see* Def. Mot.; Pl. Mot., which Judge Azrack referred to this Court for Report and Recommendation on April 29, 2022. *See* April 29, 2022 Electronic Order. On May 19 and May 27, 2022, respectively, the parties submitted supplemental letters addressing the Supreme Court's April 28, 2022 decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. ---, 142 S. Ct. 1562, 212 L.Ed.2d 552 (2022), and its impact on the instant motions. *See* DEs [86], [87], [89]. For the reasons set forth below, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; (iii) Plaintiffs' ADA, Rehabilitation Act, and ACA claims be dismissed with prejudice; and (iv) Plaintiffs' state law claim be dismissed without prejudice to refiling in the proper forum.

### II. LEGAL STANDARD

Pursuant to *Fed. R. Civ. P. 56*, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. The moving party bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See* 🚩⚠️*Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." 🚩*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also* 🚩*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.

Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." ⚑ *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." ⚑ *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment").

## III. DISCUSSION

Plaintiffs allege causes of action under: (1) Title III of the ADA; (2) Section 504 of the Rehabilitation Act; (3) Section 1557 of the ACA; and (4) various sections of the New York Human Rights Law. Applying the standards above, and for the reasons below, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; (iii) Plaintiffs' ADA, Rehabilitation Act, and ACA claims be dismissed with prejudice; and (iv) Plaintiffs' state law claim be dismissed without prejudice to refiling in the proper forum.

## A. Applicability of *Cummings v. Premier Rehab Keller, P.L.L.C.*

The Court first evaluates whether the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. ---, 142 S. Ct. 1562, 212 L.Ed.2d 552 (2022), forecloses Plaintiffs' claims for emotional distress damages in this matter. [1] Defendants contend that *Cummings* is binding on the parties' instant dispute, and precludes Plaintiffs' suit as a matter of law because the only damages they seek are for alleged emotional distress – a category expressly precluded by *Cummings*. *See* DEs [86], [89]. Plaintiffs, on the other hand, assert that – notwithstanding *Cummings* – they "may still seek compensatory damages under federal law" and maintain "federal-question jurisdiction in this courthouse." DE [87].

**\*6** In its recent 6-3 decision, the Supreme Court held that a plaintiff suing under the implied rights of action in the Rehabilitation Act and ACA cannot recover compensatory damages for emotional distress. *See Cummings*, 142 S. Ct. at 1576. The Supreme Court's analysis centered on the fact that both the

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 14 of 40

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

Rehabilitation Act and ACA were passed pursuant to Congress's powers under the Constitution's Spending Clause and that the "legitimacy of Congress' power" to enact Spending Clause legislation depends upon "whether the recipient [of federal funds] voluntarily and knowingly accepts the terms of that contract." *Id.* at 1570 (internal citation omitted). Indeed, the Supreme Court held that lower courts "may presume that a funding recipient is aware that, for breaching its Spending Clause 'contract' with the Federal Government, it will be subject to the *usual* contract remedies in private suits." *Id.* at 1571 (emphasis in original).

The Court then concluded that because emotional distress damages are not typically available in contract cases, *see id.* at 1571-76, a recipient of federal funds would not have had sufficient notice of its potential liability for such damages when it " 'engaged in the process of deciding whether [to] accept' federal dollars...." *Id.* at 1570-71 (quoting ⚑ *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296, 126 S. Ct. 2455, 2459, 165 L.Ed.2d 526 (2006)). For this reason, the Supreme Court concluded, the plaintiff could not recover damages for the "humiliation, frustration, and emotional distress" she suffered as a result of the defendant's alleged discrimination. *Id.* at 1569 (internal citation omitted).

A review of the *Cummings* decision and Plaintiffs' claims in the case at hand leads the Court to conclude that *Cummings* is both directly applicable to, and binding on this matter. In doing so, the Court rejects Plaintiffs' arguments that *Cummings* should

not be followed because it: (1) was wrongly decided; and (2) does not apply retroactively. *See* DE [87]. Not only will this Court not relitigate a matter so recently decided by the Supreme Court, but it is well-established that where the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule." ⚑ *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517, 125 L.Ed.2d 74 (1993). The Court thus concludes that the Supreme Court's opinion in *Cummings* is binding on this Court and the case at bar.

## B. Plaintiffs' ADA and Rehabilitation Act Claims

Both parties seek summary judgment on Plaintiffs' ADA and Rehabilitation Act claims. *See generally* Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Mem."), DE [78-51]; Plaintiffs' Brief in Support of Motion for Summary Judgment ("Pl. Mem."), DE [83-47]. Both the ADA and Rehabilitation Act "prohibit discrimination against qualified disabled individuals by requiring that they receive reasonable accommodations that permit them to have access to and take a meaningful part in public services and public accommodations," and claims brought under both acts are typically analyzed in tandem. *See* ⚑ *Schoengood v. Hofgur LLC*, No. 20-cv-2022, 2021 WL 1906501, at *3 (E.D.N.Y. May 12,

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 15 of 40

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

2021) (quoting *Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)). In order to do so, courts within the Second Circuit employ a three-part test, through which a plaintiff must demonstrate that: (1) he or she is a "qualified individual" with a disability; (2) the defendants are subject to the ADA and Rehabilitation Act; and (3) the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against, by reason of a plaintiff's disabilities. *Id.* at 85.

**\*7** In order to satisfy the third prong and establish discrimination, a plaintiff may rely on one of three theories of liability: (1) "disparate treatment"; (2) "disparate impact"; or (3) "failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). In this context, defendants have a presumptive obligation to provide "reasonable accommodations" to individuals with disabilities, and a covered entity's failure to provide such accommodations will be sufficient to satisfy the abovementioned third prong. *See* 42 U.S.C. § 12182(b)(2)(a)(ii); *Powell*, 364 F.3d at 85. The question of whether a proposed accommodation is reasonable is fact-specific and must be evaluated on a case-by-case basis. *See Schoengood*, 2021 WL 1906501, at \*3 (citing *Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir. 1999)).

Further, while Title III of the ADA allows for injunctive relief, but not damages, *see Powell*, 364 F.3d at 86, the Rehabilitation Act allows for the recovery of damages,

provided that the plaintiff shows that the statutory violation resulted from "deliberate indifference" to the rights secured by that statute. *See Schoengood*, 2021 WL 1906501, at \*3 (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001)). A plaintiff must also demonstrate that defendants received federal funding in order to establish a violation under the Rehabilitation Act. *Id.* (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)); *see also Doe v. Trustees of Columbia Univ. in City of New York*, No. 21-cv-1697, 2021 WL 1253974, at \*4 (S.D.N.Y. Apr. 1, 2021).

Applying these standards and the *Cummings* opinion to the facts at hand, the Court concludes that Defendants' Motion should be granted as to Plaintiffs' ADA and Rehabilitation Act causes of action, and these claims should be dismissed with prejudice. Initially, the parties do not dispute that Plaintiffs are "qualified individuals" with disabilities under the Rehabilitation Act and ADA, *see* AC ¶¶ 57, 71, and Defendants both "own[ed], lease[d], and/or operate[d] a place of public accommodation within the meaning of the ADA" and "have each been programs or activities receiving federal financial assistance pursuant to [the Rehabilitation Act]." *Id.* at ¶¶ 58, 72. Thus, the issue in dispute is whether Plaintiffs have sufficiently established that Defendants discriminated against them because of their disabilities during any one or more of their visits to the Hospital. The Court need not reach this issue, however, because Plaintiffs are precluded – by the ADA's text and the Supreme Court's ruling in *Cummings* – from seeking compensatory damages for alleged emotional distress. *See Milhouse v. Hilton*

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 16 of 40

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

*Garden Inn Employees*, No. 22-cv-2934, 2022 WL 1749844, at *7 (S.D.N.Y. May 31, 2022) (citing 🔖*Powell*, 364 F.3d at 86); *Cummings*, 142 S. Ct. at 1576.

Beginning with Plaintiffs' ADA claim, the only relief which they could seek would be injunctive relief, as private individuals "cannot recover [compensatory] damages" under Title III of the ADA. *Milhouse*, 2022 WL 1749844, at *7 (quoting 🔖*Powell*, 364 F.3d at 86). Initially, the parties do not dispute that Ryszard withdrew his request for injunctive relief at the initial summary judgment briefing stage. *See generally* Pl. Mot. Moreover, a review of the evidence before the Court reveals that both Bozena and Farkas lack standing to pursue injunctive relief under the ADA, as neither has established that they intend to return to the Hospital for medical treatment, *see* Def. 56.1 ¶¶ 35, 118, 120 – a crucial element of an injunctive relief claim. *See Krist v. Beth Israel Med. Ctr.*, No. 17-cv-1312, 2021 WL 4442943, at *9 (S.D.N.Y. Sept. 28, 2021) (citing 🔖*Schroeder v. New York Univ. Med. Ctr.*, 885 F. Supp. 594, 599 (S.D.N.Y. 1995)) (finding a plaintiff's "mere speculation" that she may be subject to future harm by merely returning to the defendant hospital insufficient to confer Article III standing). For these reasons, the Court respectfully recommends that Defendants' Motion be granted as to Plaintiffs' ADA cause of action, and that this claim be dismissed with prejudice.

**\*8** Turning next to Plaintiffs' Rehabilitation Act claim, the Court concludes that Defendants' Motion should be granted as to this cause of action, and that it too should be dismissed with prejudice. As a threshold matter, the *Cummings* decision squarely applies to Plaintiffs' Rehabilitation Act cause of action. Plaintiffs undisputedly seek compensatory damages only for alleged emotional distress, *see* Pl. 56.1 ¶¶ 166-71 – the very type of damages precluded by the Supreme Court in the context of Rehabilitation Act claims. *See Cummings*, 142 S. Ct. at 1576. For this reason, the Court respectfully recommends that Defendants' Motion be granted as to Plaintiffs' Rehabilitation Act cause of action, and that it be dismissed with prejudice. In reaching this conclusion, the Court rejects Plaintiffs' arguments that, notwithstanding the above recommendations, they are nevertheless entitled to: (i) expectation damages; (ii) nominal damages; and (iii) damages for "dignitary harm." *See* DE [87].

Plaintiffs base their first counterargument – that they are entitled to "expectation damages" on: (1) the *Cummings* court's conclusion that Defendants are subject "to those remedies traditionally available in suits for breach of contract," *Cummings*, 142 S. Ct. at 1574; (2) the notion that patients who arrive at a hospital for treatment "expect that they will be able to communicate with their healthcare providers" about their current medical conditions, DE [87] at 5; and (3) a recent post-*Cummings* decision – 🔖*Montgomery v. District of Columbia*, No. 18-cv-1928, 2022 WL 1618741, at *25 (D.D.C. May 23, 2022) – where a district court outside of the Eastern District of New York allegedly "confirmed the availability of such damages." DE [87] at 5. This argument fails in its entirety based on a misunderstanding of *Cummings*. The Supreme Court has precluded an award of emotional distress damages based on the expectations of Defendants' contractual

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 17 of 40

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

relationship with the federal government when accepting federal funds. *See Cummings*, 142 S. Ct. at 1571. According to the Court, that contractual relationship does not give rise to an expectation of emotional distress damages claimed by Defendants' patients. *Id.* at 1576. As a result, none can be claimed. This is distinguished from the putative contractual relationship between the parties here. Plaintiffs are not seeking damages based on a breach of contract in this case, which might otherwise lead to expectation damages. Rather, they are seeking emotional distress damages based on a federal statute, namely the Rehabilitation Act, which *Cummings* precludes. *See Cummings*, 142 S. Ct. at 1576.

Moreover, Plaintiffs' reliance on 🚩*Montgomery* is misplaced. Not only is 🚩*Montgomery* not binding on this Court, but significant factual distinctions exist. In 🚩*Montgomery*, a mentally ill plaintiff was interrogated multiple times in connection with a murder investigation, where law enforcement not only failed to accommodate his disabilities, but took advantage of them to elicit incriminating statements, leading to the plaintiff spending five-and-a-half years in prison awaiting trial. *See* 🚩*Montgomery*, 2022 WL 1618741, at *1-6. As a result of his civil lawsuit, the court awarded the plaintiff damages based on "the opportunity he lost when he was denied the ability to meaningfully access and participate in his interviews." 🚩*Id.* at *25. Not only are these facts drastically different from the facts at hand, but even if this Court were to adopt the 🚩*Montgomery* court's non-binding decision, Plaintiffs here have offered no evidence or authority upon

which the Court could base a decision that they should be awarded any contract-based damages for their non-compensable injuries. For these reasons, this first counterargument fails.

The Court similarly rejects Plaintiffs' argument that they are entitled to nominal damages. Plaintiffs' alleged entitlement is three-pronged and based on: (i) the Rehabilitation Act's incorporation of Title VI's remedies (one of which is nominal damages); (ii) "longstanding contract-law principles"; and (iii) Supreme Court precedent (specifically 🚩*Uzuegbunam v. Preczewski*, 592 U.S. ---, 141 S. Ct. 792, 809, 209 L.Ed.2d 94 (2021)). *See* DE [87] at 8. Defendants counter that, in the wake of *Cummings*, Plaintiffs "cannot salvage" their Rehabilitation Act claim "merely by recasting their request for relief as seeking nominal damages." DE [86] at 2. The Court agrees. Indeed, the injuries at the heart of Plaintiffs' claims amount to non-compensable emotional distress. This Court will not – and frankly, cannot – permit an award of damages, regardless of amount, where doing so would directly contradict a Supreme Court ruling. For this reason, the Court rejects Plaintiffs' second counterargument.

**\*9** Finally, the Court rejects Plaintiffs' contention that they are entitled to damages for "dignitary harm" sustained as a result of Defendants' alleged discrimination. Plaintiffs offer no post-*Cummings* authority to support their argument that compensatory damages for "dignitary harm" are distinct from the emotional distress damages precluded by *Cummings*. *See Cummings*, 142 S. Ct. at 1576. Moreover, Plaintiffs have failed to demonstrate that damages for "dignitary harm"

fall within the ambit of the "usual contract remedy" damages deemed recoverable by the Supreme Court. *See id.* at 1571. The Court thus rejects Plaintiffs' third counterargument and, for the reasons set forth above, respectfully recommends that: (i) Defendants' Motion be granted as to Plaintiffs' ADA and Rehabilitation Act causes of action; (ii) Plaintiffs' Motion be denied as to these claims; and (iii) Plaintiffs' ADA and Rehabilitation Act claims be dismissed with prejudice.

### C. **Plaintiffs' ACA Claim**

Both parties next seek summary judgment on Plaintiffs' ACA cause of action. *See generally* Def. Mem.; Pl. Mem. Section 1557 of the ACA provides that no individual shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). ACA Section 1557 claims are typically analyzed identically to Rehabilitation Act Section 504 claims. *See Vega-Ruiz v. Montefiore Med. Ctr.*, No. 17-cv-1804, 2019 WL 3080906, at *3, n. 3 (S.D.N.Y. Jul. 15, 2019). Nevertheless, the regulations implementing the ACA and the Rehabilitation Act differ. *See Fantasia v. Montefiore New Rochelle*, No. 19-cv-11054, 2022 WL 294078, at *7 (S.D.N.Y. Feb. 1, 2022). Specifically, ACA regulations require an entity operating covered health programs or activities to "take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in such programs or activities, in accordance with" certain ADA regulations.

45 C.F.R. § 92.102(a); *accord Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 65-66 (2d Cir. 2021) (*per curiam*).

Under those ADA regulations, a covered entity must "give primary consideration to the requests of individuals with disabilities" when "determining what types of auxiliary aids and services are necessary." 28 C.F.R. § 35.160(b)(2). To afford an individual "primary consideration" means the individual's choice of auxiliary aid must be honored unless the entity "can demonstrate that another equally effective means of communication is available or that the aid or service requested would fundamentally alter the nature of the program, service, or activity or would result in undue financial and administrative burdens." *Fantasia*, 2022 WL 294078, at *7 (quoting *Hernandez v. N.Y.S. Bd. of Elections*, 479 F. Supp. 3d 1, 12 (S.D.N.Y. 2020)). Healthcare providers may not "rely on an adult accompanying an individual to interpret or facilitate communication," with two presently inapplicable exceptions. *See Fantasia*, 2022 WL 294078, at *7 (quoting 28 C.F.R. § 35.160(c)(2)(ii)).

Applying these standards, the Court again concludes that Plaintiffs have failed to provide the Court with evidence to either defeat Defendants' Motion or support their motion for summary judgment. Initially, as explained in detail above, the Supreme Court's holding in *Cummings* explicitly precludes an individual suing under the ACA's implied right of action from seeking emotional distress damages. *See Cummings*, 142 S. Ct. at 1576. Here, Plaintiffs' ACA cause of action seeks solely compensatory damages for emotional distress caused by Defendants' alleged discrimination,

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 19 of 40

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

and thus fails as a matter of law. For this reason, the Court respectfully recommends that: (i) Defendants' Motion be granted as to Plaintiffs' ACA cause of action; (ii) Plaintiffs' Motion be denied as to this claim; and (iii) Plaintiffs' ACA claim be dismissed with prejudice for failure to state a claim.

### D. **Plaintiffs' State Law Claim**

**\*10** Having determined that Plaintiffs' federal claims should be dismissed, the Court recommends declining to exercise supplemental jurisdiction over their claim brought pursuant to the New York Human Rights Law. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)); *see also Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction), *report and recommendation adopted*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).

Indeed, in the interest of comity, the Second Circuit has instructed that, absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should "abstain from exercising pendent jurisdiction." *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-cv-6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007), *aff'd sub nom. Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122

(2d Cir. 2008) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159, 1159, 106 S. Ct. 2278, 2278, 90 L.Ed.2d 721 (1986)); *see also City of Chi. v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523, 534, 139 L.Ed.2d 525 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L.Ed.2d 720 (1988)) ("[T]he statute reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, a 'federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.' "). Accordingly, the Court respectfully recommends that Plaintiffs' claim brought pursuant to the New York State Human Rights Law be dismissed without prejudice and with leave to refile in the appropriate forum.

### IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; (iii) Plaintiffs' ADA, Rehabilitation Act, and ACA claims be dismissed with prejudice; and (iv) Plaintiffs' state law claim be dismissed without prejudice to refiling in the proper forum.

### V. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal

Hejmej v. Peconic Bay Medical Center, Not Reported in Fed. Supp. (2022)

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 20 of 40

the District Court's order. *See* ⚑28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); ⚑*Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); ⚑*Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 5429675

## Footnotes

1    The Court acknowledges that the parties' motions for summary judgment were fully briefed and filed prior to the Supreme Court's April 28, 2022 opinion in *Cummings*.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Shalto v. SFL Pizza Corp., Not Reported in Fed. Supp. (2020)

2020 WL 3577335

2020 WL 3577335
Only the Westlaw citation
is currently available.
United States District Court, E.D. New York.

Lesaldo SHALTO, Plaintiff,
v.
SFL PIZZA CORP. d/b/a Centro and
47-23 Vernon Blvd. LLC, Defendants.

19-CV-1687 (NGG) (ST)
|
Signed 06/30/2020

**Attorneys and Law Firms**

Donald J. Weiss, New York, NY, for Plaintiff.

Faris Hamtini, Pro Hac Vice, Law Offices of
Faris S. Hamtini, PC, Long Island City, NY, for
Defendant SFL Pizza Corp.

Michael A. Mauro, Pro Hac Vice, Long Island
City, NY, for Defendant 47-23 Vernon Blvd.
LLC.

**MEMORANDUM & ORDER**

NICHOLAS G. GARAUFIS, United States
District Judge.

**\*1** Plaintiff Lesaldo Shalto brings this action
against Defendants SFL Pizza Corp. ("SFL")
and 47-23 Vernon Blvd., LLC ("Vernon").
(Compl. (Dkt. 1).) Shalto, who uses a
wheelchair, is unable to dine at SFL's restaurant
—located in a building owned by Vernon—due
to a step at the entrance and the layout of the
dining area. (*Id.* ¶¶ 7-14.) Shalto asserts claims

pursuant to the Americans with Disabilities Act
("ADA") and its implementing regulations, as
well as analogous provisions of New York State
and New York City law. (*Id.* ¶ 16.) Defendants
each move pursuant to Federal Rule of Civil
Procedure 12(c) to dismiss the claims against
them. (SFL Mem. in Supp. of Mot. for J. on
the Pleadings ("SFL Mem.") (Dkt. 43 at ECF
56); Vernon Mem. in Supp. of Mot. for J. on the
Pleadings ("Vernon Mem.") (Dkt. 43 at ECF
3).) For the reasons stated below, Defendants'
motions are DENIED.

**I. BACKGROUND**

**A. Facts**
The court takes the following statement of facts
from Plaintiff's complaint, the well-pleaded
allegations of which the court must accept as
true for purposes of the motion for judgment
on the pleadings. *See* Patel v. Contemporary
Classics of Beverly Hills, 259 F.3d 123, 126 (2d
Cir. 2001). [1]

Plaintiff is a New York resident who is
paralyzed from the neck down and requires a
wheelchair for mobility. (Compl. ¶¶ 6-7.) SFL
operates a pizza restaurant in a building owned
by Vernon located at 47-23 Vernon Boulevard
in Long Island City, Queens. (*Id.* ¶¶ 8-9.) The
premises were renovated in 2015 to convert
the location into a pizzeria and again in 2017
to add outdoor seating. (*Id.* ¶ 20.) Plaintiff
visits the area in which the pizza restaurant
is located approximately twice monthly. (*Id.* ¶
12.) Plaintiff would like to eat inside the pizza
restaurant, and has tried to do so as recently
as March 14th, 2019, but he cannot enter the
restaurant because of a step at the entrance. (*Id.*

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Shalto v. SFL Pizza Corp., Not Reported in Fed. Supp. (2020)
Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 22 of 40
2020 WL 3577335

¶ 13.) The entrance consists of double doors that are located six inches above the sidewalk and have an approximately 24-inch deep recess. (*Id.* ¶ 26.) There are no railings on either side of the step, nor is there an accessible entrance or ramp on the premises. (*Id.*) In addition, there is no notification system to alert employees that a person using a wheelchair is waiting outside or one that allows a patron with a mobility disability to ask for assistance. (*Id.*) The dining areas are also not accessible because they lack wheelchair-friendly routes and tables that allow patrons in wheelchairs to dine at them. (*Id.*) Also, the sales counters are too high for a person in a wheelchair to use. (*Id.*) Finally, the restroom does not contain enough space for a person with a wheelchair to use it. (*Id.*)

### B. Procedural History

Plaintiff filed his complaint on March 25, 2019. (*See* Compl.) Defendants SFL and Vernon filed their answers on July 18, 2019, and August 2, 2019, respectively. (*See* SFL Answer (Dkt. 13); Vernon Answer (Dkt. 17).) Currently pending before the court are Defendants' motions for judgment on the pleadings. (*See* SFL Mem.; Vernon Mem.; Pl.'s Mem. in Opp. to Defs.' Mot. for J. on the Pleadings (Dkt. 43 at ECF 97); SFL Reply (Dkt. 43 at ECF 133); Vernon Reply (Dkt. 43 at ECF 119).)

## II. LEGAL STANDARD

**\*2** "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). A complaint will survive a motion to dismiss if it contains "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* On a motion to dismiss under Rule 12(c), the court accepts as true the factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party. *See Patel*, 259 F.3d at 126.

In evaluating a motion for judgment on the pleadings, "a court may consider the pleadings and exhibits attached thereto, statements or documents incorporated by reference, and matters of which judicial notice may be taken." *Levine v. City of New York*, No. 01-CC-3119 (DC), 2002 WL 5588, at \*1 (S.D.N.Y. Jan. 2, 2002); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (holding that courts may consider an extrinsic document when the complaint "relies heavily upon its terms and effect").

## III. DISCUSSION

### A. SFL's Motion

SFL advances four arguments for why it is entitled to judgment on the pleadings. (*See* SFL Mem.) It contends (1) that Plaintiff's claims are barred by the statute of limitations, (2) that Plaintiff lacks standing to bring this lawsuit, (3) that SFL cannot be held liable under the ADA because it made no alterations under the Act, and (4) that Plaintiff's claim is moot. (*Id.* at ECF 62-75.)

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 23 of 40

Shalto v. SFL Pizza Corp., Not Reported in Fed. Supp. (2020)

2020 WL 3577335

### 1. Statute of Limitations

SFL first argues that Plaintiff's claim is barred by the statute of limitations. (*See id.* at ECF 62.) The statute of limitations for ADA claims is determined by looking at the "most appropriate or analogous state statute of limitations;" in New York, this is the "three-year statute of limitations [applied] to Title IX Claims." *Purcell v. New York Inst. of Tech.*, 931 F.3d 59, 62-63 (2d Cir. 2019). When a claim accrues, however, is determined by federal law. *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003). The general rule is that a federal claim accrues once "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*; *see also Onibokun v. Chandler*, 749 F. App'x 65, 66 (2d Cir. 2019) (summary order). A Title III ADA claim is no different, accruing when a plaintiff "knew he had been discriminated against on the basis of his disability in the enjoyment of the goods, services, facilities, privileges, advantages, or accommodations ... to the extent that [defendant] is a place of public accommodation." *Gardner v. Wansart*, No. 05-CV-3351(SHS), 2006 WL 2742043, at *4 (S.D.N.Y. Sept. 26, 2006).

There is limited case law specifically discussing accrual of claims under Title III of the ADA, 42 U.S.C § 12182 and § 12183. Courts have alternatively adopted either the "discovery rule," under which a claim accrues when a plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured, or the "construction rule," under which a claim accrues when construction or renovation is complete. *Compare Kuchmas v Towson Univ.*, 553 F. Supp. 2d 556, 563-64 (D. Md. 2008) (holding that the statute of limitations began to run at the rental of an inaccessible unit); *Venus v Seville Food, LLC*, 14-CV-2476, 2017 WL 2364192, at *10 (D.N.J. May 31, 2017) (holding that the statute of limitations began to run when a plaintiff with a disability first visited an inaccessible diner) *with De La Rosa v. Lewis Foods of 42nd St., LLC*, 124 F. Supp. 3d 290, 300 (S.D.N.Y. 2015) (favoring the construction rule). The discovery rule tracks the standard rule of accrual, *see Southington Bd. of Educ.*, 334 F.3d at 221, and the court sees no reason to deviate from the standard here.

**\*3** The strongest argument in favor of the construction rule is that the discovery rule would prevent "operators of places of public accommodation", from ever having "the benefit of a statute of repose for non-compliant construction or alterations, as they could be haled into court decades later for non-compliant construction." *De La Rosa*, 124 F. Supp. 3d at 300. This misconstrues the relevant injury. An individual plaintiff is not injured when noncompliant construction or alterations are completed; instead, he is injured when the noncompliant construction or alterations "discriminate[ ] against [him] on the basis of disability" by denying him "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

Accepting the factual allegations of the complaint, Shalto was injured when he visited SFL's restaurant in March 2019 and was unable to avail himself of the "full and equal

Shalto v. SFL Pizza Corp., Not Reported in Fed. Supp. (2020)

2020 WL 3577335

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of the restaurant. *Id.* He then filed his complaint on March 25, 2019, within the three-year state of limitations for ADA claims.

### 2. Standing

SFL next argues that Plaintiff lacks standing to sue. (*See* SFL Mem. at ECF 66-69.) In order to have standing under the ADA, a plaintiff must (1) allege past injury under the ADA, (2) allege facts supporting a reasonable inference that this discriminatory treatment will continue; and (3) show that he intends to return to the place of public accommodation. *See* ⚑ *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008). Here, Plaintiff alleges enough factual detail to establish standing. Plaintiff alleges he was unable to access the dining area of the restaurant in March 2019. (Compl. ¶ 13.) In addition, he alleges that the violations have not been remedied, he is a resident of New York State, he frequents the area twice monthly, and he wishes to return to the restaurant if it were made accessible. (*Id.* ¶¶ 6, 12-17, 26, 31.)

SFL contends that Plaintiff has not suffered any injury, as he was served outside of the establishment at a take-out window and did not, by his actions or words, show an intent to enter. (*See* SFL Mem. at ECF 67.) However, injury for purposes of standing under the ADA occurs when a plaintiff is unable to access a public accomodation, even if no attempt was made to do so. *See* ⚑ *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013) (noting that a plaintiff "need not attempt to overcome an obvious barrier"). Thus, Plaintiff has standing under the ADA.

### 3. SFL's Liability under the ADA

SFL argues that it cannot be held liable under Section 12183(a) of the ADA because it did not own or operate the premises at the times the "alterations occurred." (*See* SFL Mem. ECF 70.) SFL relies on three district court decisions for this proposition: *De La Rosa*, 124 F. Supp. 3d 290; ⚑ *Paulick v. Ritz-Carlton Hotel Co., LLC*, No. 10-CV-04107, 2011 WL 6141015 (N.D. Cal. Dec. 8, 2011); and ⚑ *Rodriguez v. Investco, LLC.*, 305 F. Supp. 2d 1278 (M.D. Fla. 2004). (*Id.*) Of these, only *De La Rosa* supports SFL's stance. Both *Paulick* and *Rodriguez* address the question of successor liability for noncompliant construction under § 12183(a)(1), but not for noncompliant alterations under § 12183(a)(2). *See* ⚑ *Paulick*, 2011 WL 6141015 at *3; ⚑ *Rodriguez*, 305 F. Supp. 2d at 1282-83. Indeed, in *Lemmons v. Ace Hardware Corp.*, the court drew an explicit distinction between § 12183(a)(1) and § 12183(a)(2), finding successor liability may lie under the latter. ⚑ No. 12-CV-03936, 2014 WL 3107842, *7-8 (N.D. Cal. July 3, 2014).

Moreover, even accepting that SFL did not operate the premises at the time of the alterations, SFL admits that it currently operates the restaurant. (SFL Answer ¶ 8.) Plaintiff alleges several current barriers at the restaurant (Compl. ¶ 26), and SFL may be subject to liability for these violations under § 12182, which covers "existing facilities."

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 25 of 40

*Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368-69 (2d Cir. 2008).

### 4. Mootness

**\*4** SFL also asserts that Plaintiff's claims are rendered moot because SFL has installed a ramp and made other modifications to the premises. (*See* SFL Mem. at ECF 73.) When analyzing a mootness defense, factual changes made by a defendant after litigation has commenced cannot render a case moot unless "it is absolutely clear" the defendant cannot resume the allegedly offending conduct. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000).

Here, however, the court need not even go so far. SFL's mootness argument relies on evidence outside of the pleadings. (*See* SFL Mem. at ECF 73-74 (citing to an affidavit appended to its motion and photos of modification to the premises "submitted to Plaintiff in SFL's responses to discovery requests").) This evidence is not properly before the court on a motion for judgement on the pleadings, *see Levine*, 2002 WL 5588, at *1, and SFL has therefore failed to demonstrate mootness.

For the above reasons, SFL's motion for judgment on the pleadings is denied.

### B. Vernon's Motion

Vernon's motion primarily comprises a narrative argument for why Plaintiff is not a sympathetic litigant. (*See generally* Vernon Mem.) It asserts, *inter alia*, that the complaint is ambiguous and that Plaintiff is a serial ADA litigant. (*Id.*) However, it does not point to authority for why these purported deficiencies require dismissal. [2]

First, Vernon argues that Plaintiff's paralysis likely requires the help of an aide, which his complaint does not mention. (*See* Vernon Mem. at ECF 10-12.) Vernon argues that knowing whether an aide was present is "germane to [Vernon's] ability to defend, because every [d]efendant has the right to know what they are defending against." (*Id.* at ECF 11.) However, the presence of an aide is immaterial to the validity of the instant lawsuit, and Vernon cites no authority saying otherwise.

Next, Vernon argues that this case is an exercise in vexatious litigation, as Plaintiff has brought 23 other ADA lawsuits in New York's Eastern and Southern Districts. (*See* Vernon Mem. at ECF 14-17.) However, Vernon again provides no authority to support the proposition that Plaintiff's current claims should be dismissed simply because he has brought a number of lawsuits, and it is not inherently illogical for a man who is paralyzed from the neck down to be involved in several ADA lawsuits.

Finally, Vernon moves to dismiss the claims under New York State and New York City law, arguing that the certificate of occupancy issued to the pizza restaurant, which states that "the premises conform ... to the requirements of all applicable laws, rules and regulations," indicates that there is no legal violation. (*See* Vernon Mem. at ECF 12-13.) Once again, Vernon does not cite any authority to support the proposition that such a certificate per se precludes liability under the New York State

or New York City Human Rights Law. In fact, "[a] claim of disability discrimination under [state law] is governed by the same legal standards [that] govern federal ADA claims ... [t]o the extent that [a plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim." *Range v. 535 Broadway Grp. LLC*, 17-CV-0423 (WHP), 2019 WL 4182966 at *6 (S.D.N.Y. Sept. 3, 2019) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006)). This principle is also applicable to claims under the New York City Human Rights Law. *See Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 652 (S.D.N.Y. 2017).

**\*5** Therefore, Vernon's motion for judgment on the pleadings is denied.

**IV. CONCLUSION**

For the reasons stated above, SFL's and Vernon's (Dkt. 43) motions for judgment on the pleadings are DENIED. The parties are DIRECTED to contact the chambers of Magistrate Judge Steven L. Tiscione to discuss the next steps in this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3577335

## Footnotes

1    When quoting cases and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

2    Vernon also claims Plaintiff lacks standing, advancing substantially the same argument as SFL, which the court rejects for the same reasons. *See* section III.A.2, *supra.*

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 6669232
Only the Westlaw citation
is currently available.
United States District Court,
W.D. New York.

Joel Jeremiah JOHNSON, Plaintiff,
v.
DHS/ICE, et al., Defendants.

No. 13–CV–0288A(Sr).
|
Dec. 18, 2013.

**Attorneys and Law Firms**

Joel Jeremiah Johnson, Batavia, NY, pro se.

Heather A. Giambra, Schroder, Joseph &
Associates, LLP, Buffalo, NY, Raymond
A. Cowley, Cox Smith, McAllen, TX, for
Defendants.

## DECISION AND ORDER

H. KENNETH SCHROEDER, JR., District
Judge.

**\*1** This case was referred to the undersigned,
pursuant to 28 U.S.C. § 636(b)(1), for all
pretrial matters and to hear and report upon
dispositive matters. This matter is now before
the Court on plaintiff's response to the Court's
Order directing plaintiff to show cause why the
complaint should not be dismissed as against
certain defendants for his failure to serve said
defendants (Docket No. 12) and plaintiff's
motions for the appointment of counsel
(Docket Nos. 16–17). For the following

reasons, plaintiff is granted an enlargement of
time, pursuant to Fed.R.Civ.P. 4(m), to serve
the summons and complaint upon DHS/ICE,
Michael Phillips and Todd Tryon, and plaintiff's
motions for the appointment of counsel are
denied without prejudice.

## PROCEDURAL BACKGROUND

Plaintiff, Joel Jeremiah Johnson, an
immigration detainee at the Buffalo Federal
Detention Facility ("BFDF"), filed a *pro
se* complaint under, *inter alia,* *Bivens
v. Six Unknown Named Agents,* 403 U.S.
388, 398, 91 S.Ct. 1999, 29 L.Ed.2d 619
(1971), and the Americans with Disabilities
Act ("ADA"), Title III, 42 U.S.C. §
12182 *et seq.,* against defendants, DHS/
ICE (Department of Homeland Security,
Immigration and Customs Enforcement), [1]
Michael Phillips, ICE Local Field Office
Director, Todd Tryon, Acting Facilities
Director, Lieutenant Cinotti, Detention Officer
Hall and Detention Officer Doddy. Plaintiff
paid the filing fee and summonses were
issued, and plaintiff proceeded to attempt to
serve the summonses and complaint upon
each defendant. Defendants Cinotti, Hall and
Doddy have appeared in this action and their
motion for summary judgment is pending but
defendants DHS, ICE, Tryon and Phillips have
not.

On July 25, 2013, the Court (Hon. William
M. Skretny) issued an Order directing that
plaintiff show cause why the complaint
should not be dismissed as against DHS/ICE,
Phillips and Tryon ("federal defendants") [2]

Johnson v. DHS/ICE, Not Reported in F.Supp.2d (2013)
Case 8:24-cv-00121-MAD-DJS   Document 7   Filed 02/29/24   Page 28 of 40
2013 WL 6669232

based on plaintiff's failure to effect service upon said defendants pursuant to Fed.R.Civ.P. 4(m). Plaintiff responded to said Order by providing the Court with copies of "Proof[s] of Service." (Docket No. 12.) With respect to ICE, the Proof of Service indicates that on April 17, 2013, plaintiff served a "Supervisor," Mr. Delong, a person plaintiff claims was designated to accept service on behalf of ICE; with respect to both DHS and Michael Phillips, the Proofs of Service indicate that plaintiff served them by mailing the summons and complaint by certified mail to Phillips on April 17, 2013; and with respect to Todd Tryon, plaintiff claims that he left the summons and complaint with someone by the name of "Johwinker" or "Vohwinker" at the BFDF and that this individual was a person designated to accept service for Tryon. (*Id.*)

## DISCUSSION

### A. Service on Federal Agencies and Employees: Rule 4(i)

Pursuant to Fed.R.Civ.P. 4(i)(2), in order to serve a federal agency (DHS, ICE) or an employee sued in an official capacity, "a party must serve the United States [3] **and** also send a copy of the summons and complaint by registered or certified mail to the agency, corporation, officer, or employee."

**\*2** Pursuant to Fed.R.Civ.P. 4(i)(3), in order to serve an officer or employee sued individually (Phillips and Tryon) "for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States

**and** also serve the officer or employee under Rule 4(e), (f), or (g)." [4]

Based on the Proofs of Service submitted by plaintiff, it is clear that defendants DHS/ICE, Phillips and Tryon have not been served properly pursuant to Rule 4(i)(2)-(3). First, there is no proof that plaintiff served the United States, pursuant to Rule 4I(i)(1), which is required for serving both an agency of the United States and an officer or employee sued in either or both his official or individual capacity. Fed. R.Civ.P. 4(i)(2)-(3). Specifically, there in no proof that (A) plaintiff "deliver[ed]" a copy of the summons and complaint to the United State Attorney for the Western District of New York or sent a copy of the summons and complaint by registered or certified mail to the civil process clerk at the United States Attorney's Office; and (B) sent a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States in Washington, D.C. Service on the United States as set forth in Rule 4(i)(1) is required for proper service on both a federal agency and an officer or employee. *Id.,* 4(i)(2)-(3). As to DHS/ICE and Phillips, the Proofs of Service indicate that plaintiff sent the summons and complaint by certified mail to Phillips. Plaintiff, however, did not serve the United States as required. As to Tryon, not only did plaintiff fail to serve the United States, *see* Fed.R.Civ.P. 4(i)(1)(A)(B), he also failed to serve Tryon properly pursuant to Rule 4(e). There is no evidence that the individual plaintiff claimed to have "left" and "served" the summons and complaint on, Vohwinker or Johwiner, was an individual designated to accept service on behalf of Tryon. (Docket No. 12.) Accordingly, plaintiff has not established

that he properly served any of the federal defendants.

## B. Enlarge Time to Serve Summons and Complaint: Rule 4(m)

Rule 4(m) provides that if a defendant is not served within 120 days after the complaint is filed, "the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The Court, however, "shall" extend the time for service for an appropriate period of time if the plaintiff shows "good cause" for the failure to serve the defendant within 120 days. Fed.R.Civ.P. 4(m). District courts also have discretion to enlarge the 120–day period even in the absence of good cause. *See* *Zapata v. City of New York,* 502 F.3d 192, 196–67 (2d Cir.2007).

The Court notes that a prisoner or immigration detainee generally proceeds *in forma pauperis* in this Court and is therefore entitled automatically to service of the summons and complaint by the United States Marshals Service. *See* Fed.R.Civ.P. 4(c)(3); 28 U.S.C. § 1915(d). In those situations, the plaintiff is entitled to rely on the Marshals Service to perfect service and "good cause" under Rule 4(m) is shown when plaintiff provides proper instructions to the Marshals Service-*i.e.,* properly identifies the defendant-to personally serve the summons and complaint upon the defendant and the Marshals Service fails to serve the defendant. *Romandette v. Weetabix,* 807 F.2d 309, 311 (2d Cir.1986); *see also* *Murray v. Pataki,* 378 Fed.Appx. 50, 2010 WL 2025613, at *2 (2d Cir. May 24, 2008)

(Summary Order) ("As long as the *pro se* prisoner provides the information necessary to identify the defendant, the Marshals' failure to effect service automatically constitutes 'good cause' for an extension of time within the meaning of Rule 4(m).") (citations omitted)).

**\*3** For those *pro se* individuals not proceeding *in forma pauperis* and thus not entitled to Marshals Service automatically, they may seek an order from the Court directing the Marshals Service to serve the defendant(s) for a fee. *See* Fed.R.Civ.P. 4(c)(3). The granting of such an order is discretionary with the Court. It is the general practice of the Clerk of Court that at the time of filing of a complaint and paying of the filing fee, a *pro se* litigant is provided a Notice Regarding Service of Summons and Complaint pursuant to Rule 4(m) and a form motion requesting the Court to order Marshals Service. In this case, the Docker Report notes that summonses were issued to plaintiff and that he was forwarded the Clerk's Office's Notice. Plaintiff did not seek Marshals Service and attempted to serve the summonses and complaints on his own. He, however, failed to serve the federal defendants properly.

As noted, if service is not made within 120 days the Court shall dismiss the action without prejudice as to that defendant or "direct that service be effected within a specified time." Fed.R.Civ.P. 4(m). The Court shall enlarge the time to serve the summons and complaint upon a showing of good cause, and that the Court has discretion to enlarge the time in the absence of good cause. While there is "an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their

lack of legal training ... such protection 'does not exempt a party from compliance with relevant rules of procedural and substantive law....' " *Sellers v. Royal Bank of Canada,* 2013 WL 1222668, at *1 (S.D.N.Y., March 21, 2013) (citing and quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)). Moreover, ignorance of the law, even on the part of a *pro se* litigant, is not "good cause" under Rule 4(m). *Amnay v. Del Labs,* 17 F.Supp.2d 283, 285 (E.D.N.Y.2000).

Here, while plaintiff's ignorance of the manner in which he had to serve the federal defendants may not establish good cause under 4(m), the Court does have discretion to extend the time to serve the summons. *Zapata,* 502 F.3d at 196; *see also DeLuca v. AccessIT Group, Inc.,* 695 F.Supp.2d 54, 67 (S.D.N.Y., Feb.9, 2010) ("A Court has discretion to grant an extension to serve process even absent a showing of good cause.") In determining whether to exercise this discretion, the Court should consider the following factors: " '(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.' " *Jordan v. Forfeiture Support Associates,* 928 F.Supp.2d 588, 598 (E.D.N.Y., March 5, 2013) (quoting *Carroll v. Certified Moving & Storage, Co.,* 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005) (internal quotation marks omitted)). The Court finds that a review of these factors weighs in favor of granting an enlargement of time under Rule 4(m).

**\*4** The first factor is the only factor that weighs against enlarging plaintiff's time to serve the summons and complaint. The statute of limitations for plaintiff's Bivens and ADA claims is three years. *See Tapia–Ortiz v. Doe,* 171 F.3d 150, 151 (2d Cir.1999) (Bivens); *Chisholm v. United of Omaha Life Ins. Co.,* 514 F.Supp.2d 318 (D.Conn., 2007) (ADA, Title III).[5] Plaintiff's claims accrued on December 19, 2012, when he alleges that he was being transported from BFDF to ICE's offices in Buffalo, New York on an ICE bus and ordered to use a wheelchair he had not used before. The wheelchair did not contain proper safety equipment to secure its wheels on the bus and to strap plaintiff in the wheelchair and that, upon the return trip to BFDF, defendant Hall was driving to fast and plaintiff fell out of the chair and struck his head and body thereby causing serious injury. (Docket No. 1, Complaint, at ¶ ¶ 8–10.) The statute of limitations has not expired and therefore if the complaint were to be dismissed against the federal defendants, plaintiff would still have an opportunity to re-file his claims against the federal defendants.

Second, while plaintiff did not properly serve the federal defendants, he did at least provide them or representatives of DHS/ICE with copies of the summons and complaint in different ways. He forwarded to Phillips, ICE's Field Officer Director, a copy of the summons and complaint by certified mail, and he provided to a "supervisor" at BFDF the summons and complaint on behalf of Tryon. It thus cannot be said that the federal defendants did not have notice of this claim. The third factor is not applicable or, at least, does not appear to be applicable. The fourth factor also supports granting an enlargement of time

2013 WL 6669232

because while any defendant "will be burdened with the obligation to defend this lawsuit if the extension is granted, ... that does not rise to the level of prejudice necessary to tip the balance of this factor in [defendant's] favor." *Lumbermens Mut. Cas. Co. v. Dinow,* 2009 WL 2424198, at *4 (E.D.N.Y. Aug.6, 2009).

It is worth noting that while plaintiff's ignorance of Rule 4(i)'s requirements regarding service on a federal agency and officer or employee may not constitute good cause under 4(m), he did make what appears to be a good faith effort to serve the federal defendants. Accordingly, the Court finds that upon a review of the factors set forth above, plaintiff is granted a 60–day enlargement of time to serve the summons and complaint upon the federal defendants.

## C. Motions for Appointment of Counsel

Plaintiff moves for the appointment of counsel and submits, *inter alia,* that he cannot afford an attorney and that the legal issues in his case are "very complicated." (Docket Nos. 16–17.) The Court find that, at this time, the appointment of counsel is not warranted.

Plaintiff has applied to the Court for appointment of counsel pursuant to 28 U.S.C. § 1915(e). There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g., Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.,* 865 F.2d 22, 23 (2d Cir.1988). Assignment of counsel in this matter is clearly within the judge's discretion. *In re Martin–Trigona,* 737 F.2d 1254 (2d

Cir.1984). The factors to be considered in deciding whether or not to assign counsel include the following:

**\*5** 1. Whether the indigent's claims seem likely to be of substance;

2. Whether the indigent is able to investigate the crucial facts concerning his claim;

3. Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;

4. Whether the legal issues involved are complex; and

5. Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997); *see also Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986).

The Court must consider the issue of appointment carefully, of course, because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1989). Therefore, the Court must first look to the "likelihood of merit" of the underlying dispute, *Hendricks,* 114 F.3d at 392; *Cooper,* 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the ... claim are thin and his chances of prevailing are therefore poor." *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001)

(denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

The Court has reviewed the facts presented herein in light of the factors required by law and finds that the appointment of counsel is not warranted at this time. As noted, plaintiff alleges that the defendants violated his constitutional rights and Title III of the ADA when he was transported in an unsafe manner and this caused him to fall out of a wheelchair. The claims are brought against both federal defendants and three employees of a private contractor. The private contractor employees have brought a motion for summary judgment on the bases that as employees of private contractors they are not subject to suit under Bivens, *see Minecci v. Pollard,* —— U.S. ——, 132 S.Ct. 671 (2012), and that the allegations of the complaint do not establish that Title III of ADA applies to the facts of this case. (Docket No. 13–3, Memorandum of Law). Accordingly, plaintiff's motion for appointment of counsel is denied without prejudice. It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se.* 28 U.S.C. § 1654.

## CONCLUSION

For the foregoing reasons, (1) plaintiff is granted a **60–day** enlargement of time, pursuant to Fed.R.Civ.P. 4(m), to serve the summons and complaint upon defendants DHS/ICE, Michael Phillips and Todd Tryon as set forth in Fed.R.Civ.P. 4(I), and (2) plaintiff's motions for appointment of counsel (Docket No. 16–17) are denied. Plaintiff is advised that if he does not properly serve the federal defendants within **60–days** of entry of this Decision and Order the complaint will be dismissed against them without prejudice.

**\*6** The Clerk of the Court is directed to forward to plaintiff along with this Order the Clerk's Office's Notice Regarding Service of Summons and Complaint with Attached Request for U.S. Marshal Service.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6669232

## Footnotes

1    DHS/ICE is one defendant.

2    The other defendants-Cinotti, Doddy and Hall-are employees of Valley–Metro Barbosa Group, a privately owned security company providing detention officers at BFDF under a contract with ICE. (Docket No. 13–4, Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, ¶ ¶ 1–2.)

Johnson v. DHS/ICE, Not Reported in F.Supp.2d (2013)
Case 8:24-cv-00121-MAD-DJS   Document 7   Filed 02/29/24   Page 33 of 40
2013 WL 6669232

3   To serve the United States, a party must:

> **(A)** (i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought-or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk-or
>
> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
>
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

4   Fed.R.Civ.P. 4(e), Serving an Individual Within a Judicial District of the United States, provides::

> **(e) Serving an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual-other than a minor, an incompetent person, or a person whose waiver has been filed-may be served in a judicial district of the United States by:
>
> **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> **(2)** doing any of the following:
>
> **(A)** delivering a copy of the summons and of the complaint to the individual personally;
>
> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

5   The Court notes that the facts alleged may support a tort claim against the United States pursuant to the Federal Tort Claims Act, ⚑ 28 U.S.C. § § 1346(b)(1); 2401(b), provided that the plaintiff presented [the claim] in writing to the appropriate Federal agency within two years after such claim accrues....” *Id.,* § 2401(b). *See Accolla v. United States Government,* 381 Fed.Appx. 71, 2010 WL 2511566, at * (2d Cir.

June 22, 2010) (Summary Order) ("The statute provides that 'a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues....' An FTCA claim accrues at the time of the plaintiff's injury ....") (citiations omitted)).

Plaintiff has not set forth a claim under the FTCA in the complaint nor does he allege that he presented such a claim to DHS/ICE. As noted, the statute of limitations for presenting such an administrative claim with the applicable federal agency is two years from the date of the injury. See 28 U.S.C. § 2401(b).

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 35 of 40

2015 WL 151029
Only the Westlaw citation
is currently available.
United States District Court,
N.D. New York.

Rudoph M. BRUCE, II, on behalf of
himself and his son, T.R.B., Plaintiff,
v.
TOMPKINS CNTY. DEP'T OF SOC.
SERVS., through Kit KEPHART,
Cmm'r; Jennifer M. Donlan, Esq.; and
Patricia A. Carey, Comm'r, Tompkins
Cnty. Dep't of Soc. Servs., Defendants.

No. 5:14–CV–0941 (GTS/DEP).
|
Signed Jan. 7, 2015.

**Attorneys and Law Firms**

Rudolph M. Bruce, II, Newfield, NY, pro se.

**DECISION and ORDER**

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se*
civil rights action filed by Rudolph M. Bruce,
II, on behalf of himself and his son T.R.B.
("Plaintiff") against the above-captioned
county and two individuals ("Defendants")
arising from a currently pending proceeding in
Tompkins County Family Court, are (1) United
States Magistrate Judge David E. Peebles'
Report–Recommendation recommending that
Plaintiff's Complaint be dismissed without
leave to replead and without prejudice pursuant
to the *Younger* doctrine, and (2) Plaintiff's two-
page Objection, which fails to contain a specific
challenge to the Report–Recommendation.
(Dkt.Nos .4, 5.) After carefully reviewing the
relevant filings in this action, the Court can find
no clear error in the Report–Recommendation:
Magistrate Judge Peebles employed the correct
legal standards, accurately recited the facts,
and reasonably applied the law to those facts.
As a result, the Court accepts and adopts the
Report–Recommendation for the reasons stated
therein. (Dkt. No. 4.) The Court would add
only that Magistrate Judge Peebles' thorough
Report–Recommendation would survive even
a *de novo* review.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Peebles'
Report–Recommendation (Dkt. No. 4) is
***ACCEPTED*** and ***ADOPTED*** in its entirety;
and it is further

**ORDERED** that Plaintiff's Complaint (Dkt.
No. 1) is ***DISMISSED*** without leave to replead
and without prejudice.

The Court hereby certifies, for purposes of
⚐ 28 U.S.C. § 1915(a) (3), that any appeal
taken from the Court's final judgment in this
action would not be taken in good faith.

*REPORT, RECOMMENDATION,
AND ORDER*

DAVID E. PEEBLES, United States Magistrate
Judge.

*Pro se* plaintiff Rudolph M. Bruce, II.,
purporting to act on behalf of himself and

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 36 of 40

Bruce v. Tompkins County Dept. of Social Services ex rel..., Not Reported in...

2015 WL 151029

his son, T.R.B., has commenced this action against Tompkins County Department of Social Services ("DSS") and two individuals, pursuant to 🚩42 U.S.C. § 1983, alleging that the defendants have deprived him and his son of their civil rights. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for consideration. For the reasons set forth below, I recommend that plaintiff's complaint be dismissed without leave to replead.

I. *BACKGROUND*
This action was commenced on July 28, 2014. Dkt. No. 1. Plaintiff's complaint asserts claims on his behalf and on behalf of his son, T.R.B., and names Tompkins County DSS, Kit Kephart, Jennifer M. Donlan, Esq., and Patricia A. Carey as defendants. *Id* . at 1–2. Plaintiff's complaint is accompanied by an application for leave to proceed IFP. Dkt. No. 2.

In his complaint, plaintiff alleges that his son's First Amendment right of free speech was infringed by the defendants, who apparently took custody of T.R.B. and his siblings[1] on or about June 17, 2014, based upon T.R.B.'s statement that "he would rather be dead if he could not be with his family."[2] Dkt. No. 1 at 5. The complaint suggests that, prior to taking custody of T.R.B. and his siblings, Tompkins County DSS investigated a complaint of alleged child neglect, and proceedings before Honorable Joseph R. Cassidy, a Tompkins County Family Court Judge, have commenced regarding the custody of the children. *Id.* at 6.

**\*2** Liberally construed, plaintiff's complaint alleges that defendants have deprived him

of his right to custody of his children under the First, Fourth, Fifth, and Fourteenth Amendments, and have deprived T.R.B. of his First Amendment right to free speech. *See generally* Dkt. No. 1. As relief, plaintiff seeks (1) return of his children to his custody and (2) Judge Cassidy's recusal from the pending family court matter in Tompkins County or removal of the matter to Broome County. *Id.* at 4, 7.

II. *DISCUSSION*

A. *Application to Proceed IFP*
When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 🚩28 U.S.C. § 1915(a)(1).[3] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application is granted.[4]

B. *Sufficiency of Plaintiff's Claims*

1. *Standard of Review*
Because I have granted plaintiff's motion to proceed *in forma pauperis,* I must review the sufficiency of the claims set forth in his complaint in light of 🚩28 U.S.C. § 1915(e). 🚩Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against

Bruce v. Tomkins County Dept. of Social Services ex rel..., Not Reported in...

Case 8:24-cv-00121-MAD-DJS    Document 7    Filed 02/29/24    Page 37 of 40

2015 WL 151029

a defendant who is immune from such relief."
28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States,* Nos. 99–MC–0304, 99–MC–0408, 1999 WL 1067841, at *2 (D.Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan,* 49 F.3d. 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the

purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*3** When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank,* 162 F.R .D. 15, 16 (N.D.N.Y.1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus,

Case 8:24-cv-00121-MAD-DJS   Document 7   Filed 02/29/24   Page 38 of 40

Bruce v. Tompkins County Dept. of Social Services ex rel..., Not Reported in...

2015 WL 151029

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a) (2)).

2. *Analysis of Plaintiff's Claims*

It is clear from plaintiff's complaint that the claims asserted on his behalf and on behalf of T.R.B. directly relate to a pending proceeding before Judge Cassidy in Tompkins County Family Court regarding the custody of T.R.B. and his siblings. Dkt. No. 1 at 6. Pursuant to *Younger v. Harris,* 401 U.S. 37, 43–45 (1971), and its progeny, however, a federal district court does not have jurisdiction over an action seeking injunctive or declaratory relief "where '1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in state court.' " *Parent v. N.Y.,* 485 F. App'x 500, 503 (2d Cir.2012) (quoting *Liberty Mut. Ins. Co. v. Hurlbut,* 585 F.3d 639, 647 (2d Cir.2009)). The *Younger* doctrine "applies with equal force to [both criminal and] civil proceedings," including proceedings pending in family courts. *Parent,* 485 F. A'ppx at 503; *Donkor v. City of N.Y. Human Res. Admin. Special Servs. for Children,* 673 F.Supp. 1221, 1224 (S.D.N.Y.1987).

**\*4** In this case, it is clear from plaintiff's complaint that the three conditions necessary to establish *Younger* abstention are satisfied. First, as discussed above, there is an ongoing proceeding in Tompkins County Family Court concerning plaintiff and the custody of his

children. Dkt. No. 1 at 6. Second, "[a] state plainly has an interest in the outcome of a child custody dispute adjudicated in its courts." *Grieve v. Tamerin,* 269 F.3d 149, 152–53 (2d Cir.2001). Turning to the third condition, "the relevant question under *Younger* is whether the state's procedural remedies could provide the relief sought not whether the state will provide the constitutional ruling which the plaintiff seeks." *Spargo v. N.Y. State Comm'n of Judicial Conduct,* 351 F.3d 65, 79 (2d Cir.2003) (quotation marks, alterations, emphasis omitted). Courts in this circuit have frequently concluded that a pending proceeding in state family court "affords ... adequate opportunity for judicial review of [a plaintiff's] constitutional claims." *Best v. City of N.Y.,* No. 12–CV–7874, 2014 WL 163899, at \*10 (S.D.N.Y. Jan. 15, 2014); *see also Hidalgo v. N.Y.,* 11–CV–5074, 2011 WL 5838494, at \*3 (E.D.N.Y.21, 2011); *Reinhardt v. Mass. Dep't of Soc. Servs.,* 715 F.Supp. 1253, 1257 (S.D.N.Y.1989).

Based upon the foregoing, I recommend that the court abstain from addressing any of the claims asserted in the plaintiff's complaint, all of which relate directly to the proceeding pending in Tompkins County Family Court.

C. *Whether to Permit Amendment*

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ( "The court should freely give leave when justice

so requires."); *see also* Mathon v. Marine Midland Bank, N.A., 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see also* Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *accord, Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*5** In this case, the court is precluded from adjudicating the claims asserted in plaintiff's complaint on his behalf and on behalf of T.R .B. due to the pending proceeding in Tompkins County Family Court, and no amendment to the complaint could cure this defect. Accordingly, I recommend that plaintiff not be granted leave to replead. [5]

III. *SUMMARU AND RECOMMENDATION*
A review of plaintiff's application for leave to proceed IFP reflects that he is eligible for that status. Because all of plaintiff's claims asserted both on his behalf and on behalf of T.R.B. relate to an ongoing proceeding in Tompkins County Family Court, however, I recommend that the court abstain from adjudicating any of them. Based upon the foregoing, it is hereby

ORDERED that plaintiff's leave to proceed in this action *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint be DISMISSED without leave to replead and without prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed Sept. 4, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 151029

# Footnotes

1   Plaintiff's complaint alludes to T.R.B.'s brother and sister, and plaintiff's IFP application indicates that plaintiff has three children. Dkt. No. 1 at 5; Dkt. No. 2 at 2.

2   Plaintiff's complaint does not disclose the age of T.R.B. Dkt. No. 1.

3   The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed.Cl.2006); *see also Fridman v. City of N.Y.,* 195 F.Supp.2d 534, 536 n. 1 (S.D.N.Y.2002).

4   Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

5   It is worth noting that plaintiff is precluded from pursuing claims on behalf of his son, T.R.B., *pro se. See* Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir.1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); *see also* Fauconier v. Comm. on Special Educ., No. 02–CV–1050, 2003 WL 21345549, at *1 (S.D.N.Y. June 10, 2003). In the event my recommendation that plaintiff's complaint be dismissed without leave to replead is not adopted by the district judge, and any of the claims asserted on behalf of T.R.B. survive, plaintiff must first obtain legal representation to pursue those claims.

   In addition, because Tompkins County DSS is not amenable to suit, *Hoisington v. Cnty. of Sullivan,* 55 F.Supp.2d 212, 214 (S.D.N.Y.1999), in the event any portion of the plaintiff's complaint survives review by the district judge, I recommend that Tompkins County be substituted as a defendant in the place of Tompkins County DSS.